```
            UNITED STATES DISTRICT COURT
         FOR THE ESTERN DISTRICT OF ARKANSAS
                 FORT SMITH DIVISION
                                    )
DAVID HARPER                        )
     Defendant,                     )   Case No. 2:16-CR-20002
                                    )
vs.                                 )
                                    )
UNITED STATES OF AMERICA            )
     Plaintiff.                     )
```

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JUL 16 2020
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

## MOTION FOR MODIFICATION OF SENTENCE

Comes now, David Harper pro se out of necessity, the defendant in the above entitled case number, asking that this Honorable Court grant a modification of his sentence to end his term of imprisonment under 18 USC 3583(C), or any other applicable statute the court may find appropriate, due to the ongoing COVID-19 pandemic. In supportr of this motion, Harper submits the following:

I. Courts Ability to Modify Sentence.

Under 18 USC 3583(C)(1)(A)(i), the court has the ability to modify the term of imprisonment when extraordinary and compelling reasons warrent such a reduction. The COVID-19 pandemic is such a reason. This court has stated in United States v. Irvine, No:3:19-CR-30004, 2020 US Dist Lexis 64881 (W.D. Ark, April 14, 2020), "The Court has little doubt that the COVID-19 pandemic would amount to an inmates release in some cases." Also in United States v. Vaughn, No:2:16-CR-20035, 2020 US Dist Lexis 64882 (W.D. Ark, April 14, 2020), "The Court agrees with defense counsel that a substantial reduction in the number of individuals incarcerated in BOP facilities would likely reduce the system-wide threat posed to prisoners by COVID-19," which would fall under the banner of "extraordinary and compelling reasons" of 18 USC 3583(C)(1)(A)(i).

(1)

II.  Procedural Process of 18 USC 3582(C)(1)(A).

    In 18 USC 3582(C)(1)(A), the procedures that need to be taken before an inmate can petition the court to consider this motion are laid out.  Harper has bypassed these steps and has come directly to the court.  Harper asserts that to wait for these steps to be completed would put his health and increased and undo risk now that USP Marion has confirmed cases of COVID-19.  This court in the previously cited Vaughn case has stated that, "consistant with guidelines from the Supreme Court, noted by the government, the court declines to read this exhaustion or inactivity as a judical bar."  Poulios v. United States, No: 2-909-CR-109, 2020 WL192275 (E.D. VA, April 21, 2020) found that the exhaustion requirement be waved if "(1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequite relief; or (3) prsuit of agency review would subject the petitioner to under prejudice."  It is common knowledge that the BOP review process and procedures for compassionate release is futile even in the most extreme of cases, so much so that the law regarding compassionate release had to be changed with the First Step Act of 2018.  In a pandemic such as COVID-19, does an inmate just sit and wait and risk his health over procedure and paperwork or does he take action and allow the court to take action to better protect himself?  Harper has taken action. This action is consistent with other court findings, such as United States v. Clark, No: 4:08-CR-0096, 2020 WL3395540 (S.D. Iowa, June 17, 2020) that states: "The Courts concern, this is that the Defendant's pre-existing medical conditions create an untenable risk of death should Defendant contract a lethal, easily spread virus which there is no known cure, no effective treatment and no vaccine.  It also is telling that three months since COVID-19 has reshaped America, the Government is yet to provide medical expert evidence, at least to this Court, showing that such health conditions do not increase the risk of COVID-19 complications. Baring such evidence, the Court is leath to disregard Defendants. Numerous courts also have held release particulary is justified when the inmate suffers from pre-existing health conditions that increase the likelihood of a lethal COVID-19 case."

III.  Harpers Health Conditions

The Center for Disease Control (CDC) released an updated list of factors that puts a person at risk of COVID-19 complications on June 25, 2020.  Harper faces the following:

A) Age.  Harper is 53 years old.  The CDC now states in the matter of age: "CDC has removed the spcific age threshold from the older adult classification.  CDC now warns that among adults, risks increase steadily as your age and it's not just those over the age of 65 that are at increased risk."

B) Smoking.  The CDC states: "Being a current or former cigarette smoker may increase your risk of severe illness from COVID-19."  Harper didn't smoke cigarettes, but was a heavy cigar and pipe smoker for nearly 20 years.  Harper quit smoking in 2006, but this still increases his risk for complications due to COVID-19.

C) Obesity:  The CDC has lowered the threat due to obesity from having a body mass index of over 42 to now having a body mass index of over 30.  In July of 2020 Harpers weight was 301 pounds, putting his body mass index near 40, well over the updated threat risk for COVID-19 complications.  Several courts have recognized obesity as reasons for compassionate release.  Below is a small sampling:

   United States v. Barber, 6:18-CR-00406-AA, 2020 WL2404679
   (D. OR, May 12, 2020)
   United States v. Hunt, 2:18-CR-20037-DPH-DRG, 2020 WL239522
   (E.D. Mich, May 12, 2020)
   United States v. Ullings, 1:10-CR-00406-MLB-1, 2020 WL2394096
   (N.D. GA, May 12, 2020)
   United States v. Jenkins, 99-CR-00439-JLK-1, 2020 WL2466911
   (D. CO, May 8, 2020)
   United States v. Quintero, 6:08-CR-06007-DGL-1, 2020 WL2175171
   (W.D. NY, May 6, 2020)

D) Hypertension/High Blood Pressure:  The CDC considers high blood pressure as a cause for higher risk of complications due to COVID-19.  Harpers blood pressure is barely controlled on four different medications (Lisinopril - 40 MG, Amlodipine

- 5 MG, Metropol Tartarate - 25 MG, Fouresimide - 40 MG). Again, several courts have recognized high blood pressure as reasons for compassionate release due to the COVID-19 pandemic. Blow is a small sampling:

    United States v. Handy, 3:10-CR-00128-RNC, 2020 WL2487371 (D. Conn, May 14, 2020)
    United States v. Mattingly, 6:15-CR-00005-NKM-JCH, 2020 WL2499707 (W.D. VA, May 14, 2020)
    United States v. Sedge, 1:16-CR-00537-KAM, 2020 WL245071 (E.D. NY, May 13, 2020)
    United States v. Ramires, 1:17-CR-10328-WGY, 2020 WL2402858 (D. Mass, May 12, 2020)
    United States v. Reddy, 2:13-CR-20358-MFL-LJM-1, 2020 WL2320093 (E.D. Mich, May 11, 2020)

Harper also suffers from poor circulation in his legs that casues severe edema and needs to wear compression socks to combat the swelling and is linked to his high blood pressure. Harper also has Obstructive Sleep Apnea that requires use of a CPAP machine at night to keep him breathing while sleeping.

(4)

IV.  Harpers Past and Prison Record.

Harper was arrested in January 2016.  Prior to his arrest, Harper had no criminal record.  He was working a free-lance computer programmer/web developer/web designer.

Harper was sentenced in November of 2016 to 360 months of incarceration and 60 months of supervised release.  After a rough start in the BOP (see Harpers 2255 motion for details), Harper has been able to take several Adult Continuing Education (ACE) classes, and has taught an ACE class in public speaking.

Harper has worked with the psychology department and with the tools they have offered, as well as having learned to draw and paint, Harper now has the tools to deal with his severe depression (see Harpers psycological examination submitted to the court in 2016), which he now knows was the primary cause for taking the actions he took that lead to his arrest.

Harper has had no disciplinary write-ups since his arrest.

Harper has a custody score of 8.  This custody score would normally place Harper at a minimum security facility, but due to the length of sentence and BOP policy, he must be placed at a medium security facility.

The First Step Act of 2018 required the BOP to assess an inmates risk of re-offending.  Harper was assessed to have a minimum risk of re-offending.

V.  Harpers Post Release Plan.

If the court grants Harpers request for compassionate release, Harper asks to be released to: 1165 Roxbury #101, Los Angeles, CA 90035.  This address is a two bedroom, two bathroom condo that was owned by his Grandmother (Edith Nupoll), and after her death was left to a family trust that is administered by Harpers mother (Janis Harper), and his uncle (Richard Nupoll).  Currently the condo is occupied by Harpers sister (Debi Harper - formerly Debi Blumenfeld) and Harper would be sharing the condo with her.

Upon release Harper would take appropriate actions need to register as a sex offender in the state of California.  Harper would also take steps to get medical coverage through California's expanded medicaide.  Harper would also renew his driver's lisence and update all pertinante identification documents.

After release, Harper would update his computer programming skills, a profession that he worked at for nearly twenty years, and find work as a freelance web designer/web developer.  Harper would also explore doing application development for smart phones, TVs, and speakers to add to his income.

Harpers family has agreed to support him while he gets himself re-established in society and find work.  Harper also plans to be a care giver to his sister who is on disability due to back issues.  Since 2018, Harper's sister has gone through spinal surgery, a divorce, and breast cancer.  Having her big brother around to do the heavy lifting and drive her to her many appointments would allow her to truely focus on getting healthy.

Harper realizes that this compassionate release may only apply to his incarceration and not his supervised release time. Harper also realizes that the court may extend the terms of his supervised release to balance out his decreased time incarcerated. Harper would have no objections to this and would follow all conditions set forth by the court and his supervised release officer.

## VI.  Conclusion

     Harper has shown that he is at increased risk for serious complication or even death due to COVID-19.  The COVID-19 pandemic is not going to stop any time soon.  Even Dr. Anthony Fauchi when addressing congress has said that infection rates could top 100,00 daily in the near future.  At the time of this filing, the infection rate had already reached 69,000.  The spread in prisons has already been shown to be explosive once it gets in.  Harper has shown that he has a minimal risk of re-offending, he has the support from his family, and he has a plan for release.  Harper prays that this court will grant this motion for compassionate release.

     Harper has tried to get copies of his medical and prison records from the staff at USP Marion to send to the courts for review.  Harpers requests have been met with silence at the time of this filing.  Harper asks this Honorable Court to assign councel to aid him in getting these documents to the Court for review to aid the Court in making its decision to grant or deny Harpers motion for compassionate release.

VII.  Prayer for Relief.

Wherefore David Harper comes before this Honorable Court praying that his motion for compassionate release be granted due to the COVID-19 pandemic.

Respectfully submitted this 11th day of July, 2020

_____                   _7/11 20_____
Signature                                    Date

David Harper #14100-010
United States Penitentiary
P.O. Box 1000
Marion, IL  62959

(8)

David Harper #14100-010
United States Penitentiary Marion
P.O. Box 1000
Marion, IL 62959

United States District Court
Attn: Clerk of the Court
Room 1038
30 South 6th Street
Fort Smith, Arkansas 72901

