**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **Case No. 2:16CR20002** |
| | ) | |
| **DAVID HARPER** | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO REDUCE SENTENCE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

Comes now the United States of America, and for its Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), states:

**PROCEDURAL BACKGROUND**

On January 27, 2016, Defendant David Harper, (hereinafter "Harper"), was named in a one count indictment charging that he knowingly crossed a state line with the intent to engage in a sexual act with a person who had not attained the age of 12 years and attempted to do such, all in violation of 18 U.S.C. § 2241(c). (Doc. 4). On June 29, 2016, Harper appeared with appointed counsel before the Honorable P.K. Holmes, III, Chief United States District Judge for the Western District of Arkansas, for a change of plea hearing. (Doc. 19). Pursuant to a written plea agreement, Harper pleaded guilty to the one count indictment. (Docs. 19, 20). The district court accepted Harper's guilty plea and ordered a presentence investigation. (Doc. 19).

A sentencing hearing was conducted on November 17, 2016, at the conclusion of which Harper was sentenced to the mandatory minimum sentence of 360 months imprisonment, to be followed by five years of supervised release. (Doc. 30).  Judgment was entered on November 18, 2016. (Doc. 32). Harper did not pursue a direct appeal from the judgment.

1

On May 29, 2018, Harper filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 36). Harper argued that his court appointed counsel had been ineffective, but the district court found Harper's Motion to have been filed six months after his limitation period expired, and accordingly dismissed the Motion with prejudice. (Doc. 40). Judgment was entered on July 30, 2018. (Doc. 41).

On July 16, 2020, Harper filed a "Motion for Modification of Sentence" under 18 U.S.C. § 3582(c), arguing that the COVID-19 pandemic constituted extraordinary and compelling reasons for his release from imprisonment. (Doc. 42). On July 23, 2020, the district court denied Harper's Motion, finding that Harper failed to exhaust administrative remedies within the Bureau of Prisons before filing his Motion. (Doc. 43). On August 31, 2020, Harper refiled his Motion for Modification of Sentence, stating that he had filed a petition for compassionate release with the warden at his location of imprisonment and had not received a response over 30 days later. (Doc. 44). On October 9, 2020, the district court denied Harper's Motion, finding that the factors listed in 18 U.S.C. § 3553(a) did not support modification of Harper's sentence. (Doc. 46).

On April 17, 2026, Harper filed the instant second Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (Doc. 47). On April 17, 2026, this Court issued a text only order directing the government to respond to Harper's Motion. (Doc. 49).

## LAW AND ARGUMENT

While sentences are final judgments, meaning a court ordinarily may not modify a term of imprisonment once it has been imposed, the First Step Act was passed in 2018, and facilitated an exception to the finality of sentences. 18 U.S.C. § 3582(c), Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act amended Section 3582(c)(1)(A) to permit incarcerated defendants to

file motions with the court seeking release. "Relief available under 18 U.S.C. § 3582(c)(1)(A) is sometimes described informally as 'compassionate release.'" *United States v. Crandall*, 25 F.4th 582, 583 (8th Cir. 2022). A district court may reduce a defendant's sentence after considering the factors set forth in 18 U.S.C. § 3553(a) if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.*, quoting 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

In his Motion for Reduction of Sentence pursuant to Section 3582, Harper sets forth the reasons he believes are extraordinary and compelling and which would support a reduction in his sentence. He argues that: (1) he is 59 years of age and has a combination of medical conditions demonstrating ongoing deterioration consistent with accelerated aging in custody (p. 15); (2) the medical decline of his elderly mother when Harper is the only available caregiver (pp. 19-21); (3) other inmates have been granted compassionate release so Harper should receive the same in order to avoid unwarranted sentence disparities (pp. 21-23); and (4) his "remarkable rehabilitation" (pp. 25-28).

Because Harper has failed to exhaust his administrative remedies on all but possibly one of the issues he raises in his motion, dismissal of his petition in its entirety or dismissal of those claims not presented to the warden of the prison in which he is incarcerated should be dismissed. None of the factors Harper cites constitute extraordinary or compelling reasons which would warrant a reduction in his sentence, particularly when the factors listed in 18 U.S.C. § 3553(a) are considered. For these reasons, Harper's Motion should be denied.

A.    **Harper's motion for compassionate release should be dismissed based on his failure to exhaust his administrative remedies by first presenting his request to the warden of the facility in which he is incarcerated. Alternatively, all but one of the issues raised in his motion should be dismissed based on his alleged request to the warden on that singular issue.**

Prior to the passage of the First Step Act, only the Bureau of Prisons Director had the authority to bring a compassionate release motion on a defendant's behalf. *United States v. Brewer*, 2026 WL 710934, *2 (D.S.D. Mar. 13, 2026). With the enactment of the First Step Act, courts may grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*, citing 18 U.S.C. 3582(c)(1)(A).

The exhaustion requirement is a mandatory claim-processing rule. *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (citations removed). "Mandatory claim-processing rules seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* (citations removed). Thus, courts dismiss unexhausted compassionate-release motions without prejudice. *Id.*, citing *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).

On page 14 of Harper's motion for compassionate release, he states that he has satisfied the exhaustion requirement by filing his request for compassionate release to the warden at FCI Lompoc II where he is currently incarcerated. (Doc. 47, p. 14). Harper says that he filed that request on March 4, 2026, and has attached it to the instant motion as "Exhibit 1: Administrative Remedy." (Doc. 47, pp. 31-35). Harper argues that because he filed the request on March 4, 2026, waited more than the requisite 30 days without receiving a response from the warden before filing his

instant motion with this Court on April 17, 2026, "exhaustion is not an issue in this case." (Doc. 47, p. 14-15).

The government responds that Harper has failed to exhaust all administrative remedies for two reasons: first, he does not carry his burden of proof that the request attached to his motion as Exhibit 1 was ever actually sent to or received by anyone at the prison, and second, assuming the request was actually sent to the warden, it contains only one of the four arguments he makes in his motion to this Court. Accordingly, he failed to establish exhaustion as to three of the arguments he raises in his instant motion, and those arguments should be dismissed. As to the one issue that is addressed in his alleged request to the warden, that he is the only available caregiver for his elderly mother, he fails to carry his burden of showing that he actually submitted that request to the warden.

Harper's "Exhibit 1," which he says he filed with the warden, looks to be a draft of a request – there is no indication anywhere on the document that it was sent or received. Based on Harper's prior filing of an unexhausted motion for compassionate release, there is good reason to question the validity of Harper's claim that he has sent a request to the warden. Harper's prior motion was filed on July 16, 2020, and he explained that he had "bypassed" sending the request first to the warden because it was "common knowledge that the BOP review process and procedures for compassionate release [are] futile even in the most extreme of cases[.]" (Doc. 42, p. 2). That motion was dismissed for failure to exhaust administrative remedies. (Doc. 43). The government has contacted the prison where Harper is incarcerated in Lompoc, California, and left a detailed message inquiring whether Harper's request was actually received, but to date has received no response from the prison. Therefore, for purposes of argument, the government will address the merits of the one argument Harper allegedly addressed to the warden.

The arguments that Harper did not raise in his alleged request to the warden at FCI Lompoc II: that his medical conditions constitute extraordinary and compelling reasons to modify his sentence, that there exist sentence disparities between he and other similar defendants, and that he has demonstrated "remarkable rehabilitation" during his incarceration, should be dismissed by this Court for failure to exhaust administrative remedies.

In *United States v. Bass*, 2024 WL 3552030, the Eastern District of Missouri ruled on an identical situation, concluding "that under these circumstances, it may address Defendant's administratively exhausted claim concerning his father's medical condition but must dismiss his unexhausted claims without prejudice." *Id.* at *2 (E.D. Mo. July 26, 2024) (citing *United States v. Williams*, 987 F.3d 700 (7th Cir. 2021), holding that an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau of Prisons as in a motion to the court, and that any contrary approach would undermine the purpose of exhaustion.). Accordingly, the three grounds Harper has addressed in his motion to this court which were not addressed in his alleged request to the warden of his facility should be dismissed.

**B.** **Harper's claims that his mother is incapacitated and that he is the only available caregiver are not supported by any evidence, and should thus be denied for failure to meet his burden of establishing circumstances supporting compassionate release.**

Section 1B1.13 of the United States Sentencing Guidelines sets forth the policy statement including definitions for the extraordinary and compelling reasons requirement within 18 U.S.C. § 3582(c). Section 1B1.13(b)(3) enumerates the family circumstances that a court may consider in deciding whether to grant compassionate release, and subsection (b)(3)(C) addresses the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent. Harper invokes this subsection in support of his motion for compassionate release, arguing the "serious and progressive medical decline of his mother, for whom he is the only

6

available child and caregiver." (Doc. 47, p. 19).  Harper states that his mother is "approaching 80 years of age" and has a history of medical conditions. (*Id.*).

Harper provides no evidence to support those claims, and he concedes that his mother is currently "marginally independent[,]" but that her condition is consistent with "*foreseeable* functional decline" as she ages. (*Id.*, p. 20) (emphasis added). Harper goes on to say that his mother is currently "hanging in[,]" but further decline is "*medically foreseeable.*" (*Id.*) (emphasis added). In Harper's "Exhibit 1," which is his alleged compassionate release request to the warden, he says that his mother's health "has the *potential* to fall quickly." (Doc. 47, p. 33) (emphasis added). Harper provides no medical evidence whatsoever establishing the veracity of any of these statements, and even if he did, Section 1B1.13(b)(3)(C) cites the "incapacitation" of the defendant's parent rather than what is "foreseeable." Harper additionally states that he is the only person available to be her caregiver, describing other family members who have passed away, but failing to provide any evidence that there are no other available caretakers.

To establish an extraordinary and compelling circumstance for compassionate release under Section 1B1.13(b)(3)(C), Harper must show that (1) his mother is incapacitated, and (2) he is the only available caregiver for her. Because he has provided no evidence that his mother is incapacitated, describing her as marginally independent and hanging in, he fails to meet the first requirement. Harper has submitted no medical documentation whatsoever in support of his claim, such as affidavits or medical records. *See United States v. Edenso*, 2026 WL 1030601 at *3 (D.S.D. Apr. 16, 2026) (noting lack of supporting documentation that defendant's parent is incapacitated and citing *United States v. Ortega*, 2021 WL 5038791 (D. Kan. Oct. 29, 2021) for proposition that a letter from a doctor's office discussing defendant's mother's condition demonstrated incapacitation).

Harper also fails to establish that he is the only available caretaker for his mother even if she were incapacitated, providing only conclusory statements that no one else is available. Despite the death certificates for his father and sister that he attached to the memo addressed to the warden, Harper has failed to say whether there may be other family members besides children that are nearby or capable of caring for his mother. "The availability of any other potential caregiver is enough to preclude compassionate release for extraordinary and compelling reasons under § 1B1.13(b)(3)(C)." *Brewer*, 2026 WL 710934 at *5. Harper fails to say whether his mother currently has a caregiver, whether she currently needs a caregiver, and if so, who is currently handling that responsibility. Accordingly, he has failed to carry his burden of establishing extraordinary or compelling reasons for modification of his sentence based on family circumstances.

**C.    The factors under 18 U.S.C. § 3553(a) do not support modification of Harper's sentence.**

Although Section 1B1.13(a) makes clear that this Court need not consider the § 3553(a) factors in the absence of extraordinary or compelling reasons to reduce a sentence, a review of those factors reinforces the conclusion that a sentencing reduction is not appropriate in Harper's individual case. For these reasons, Harper's motion should be denied.

This Court is afforded "broad discretion" in weighing the § 3553(a) factors when deciding whether to grant a compassionate release reduction. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021). Compassionate release can be denied after balancing the § 3553(a) factors because compassionate release is "discretionary, not mandatory." *United States v. Fetters*, 163 F.4th 513, 517 (8th Cir. 2026). Denial of compassionate release is appropriate even when a district court finds the existence of extraordinary and compelling reasons, but multiple § 3553(a) aggravating factors strongly weighed against release. 15 F.4th at 857.

8

The PSR filed in Harper's case on September 23, 2016, describes the offense conduct for which Harper is currently incarcerated. (Doc. 27). The PSR states that an undercover Fort Smith detective posed online as the mother of two children, a 9 year old daughter and an 8 year old son, in August, 2015. (PSR, ¶ 9). Harper was on the website and chatted with the detective continuously between August, 2015, and January, 2016, when he purchased an airline ticket and traveled from his home in Henderson, Nevada to Fort Smith, Arkansas, for the purpose of engaging in sexual acts with the fictitious children and their mother.  (PSR, pp. 4-10).

During the conversations with the detective, Harper admitted that he had had pornographic obsessions since the age of 13, that he had performed oral sex on his 11-year-old sister when he was 14 years old, and that the contact ended when they got caught. (PSR, ¶ 13). Harper pursued the relationship with the detective despite repeatedly expressing his fear that law enforcement might be involved. (PSR, ¶¶¶¶ 16, 32, 35, 42). In October, 2015, Harper messaged the detective that he would have the money to visit within a couple of months. (PSR, ¶ 19). Harper confirmed in messages that the fictitious mother wanted Harper to "make love" to her 9-year-old daughter and impregnate her rather than just "train" the daughter in lovemaking. (PSR, ¶ 20).

Harper expressed a desire to show the daughter how great sex felt and "get her addicted to sex." (PSR, ¶ 22).  On January 25, 2016, Harper traveled via airline to Fort Smith, Arkansas, where he was arrested. (PSR, ¶ 42). During a post-arrest interview, Harper told police he would stop his conduct if they would release him. (PSR, ¶ 43). Harper admitted fantasies involving "family love" since his adolescence, and told police that he did not feel sex with a child was wrong if it was not forced. (*Id.*). Harper told police that if a child was "groomed" and accepting of the activity, it was not wrong even though it was illegal. (*Id.*). Harper further admitted that he had searched the internet for ways to make a child comfortable during sexual activity. (*Id.*). Harper also told police

9

that one of his roommates in Nevada had two granddaughters aged 9 and 8, and that he had told the roommate he did not need to be around the grandchildren, admitting that he got aroused when pushing them on swings. (PSR, ¶ 45). Police spoke to the roommate, who said that Harper had told her he had sexual dreams about her grandchildren. (PSR, ¶ 51).

The nature and circumstances of Harper's offense of conviction and the need to protect the public from further misconduct weighs heavily against any reduction in Harper's sentence. He is obviously a child predator by his own admission, he has had a lifelong obsession with pornography and incest, committing a sexual crime against his sister when he was 14 and she was 11 years old. Harper freely admitted to police and to his roommate that he was sexually attracted to her 8 and 9 year old granddaughters. He was 49 years old when he committed the instant offense, and is only 59 years old currently. The public remains in danger from Harper's desire to have sexual relations with children, and he has served less than ten years of a mandatory minimum sentence of 30 years imprisonment.

To make matters worse, Harper's intent if he were to be released from prison would be to "take some online classes to update my programming skills and work as a freelance application and web developer." (Doc. 47, p. 33). The government argues that the Section 3553(a) factors weigh more heavily against any reduction in Harper's sentence than do his arguments that his mother might need him to be her caregiver at some point in the future when her health fails. Accordingly, his motion for compassionate release should be denied. Because none of Harper's additional arguments in favor of compassionate release were brought to the attention of the warden prior to filing his motion in this Court, they should be dismissed.

10

**CONCLUSION**

For the reasons stated above, Harper's motion for a reduction of his sentence pursuant to 18 U.S.C. Section 3582(c)(1)(A) should be denied.

Respectfully submitted,

Kimberly D. Harris
United States Attorney

By:     */s/ Tyler Williams*
         Tyler Williams
         Assistant United States Attorney
         Arkansas Bar No. 2013171
         414 Parker Avenue
         Fort Smith, AR  72901
         Phone: (479) 783-5125

**CERTIFICATE OF SERVICE**

I, Tyler Williams, Assistant United States Attorney for the Western District of Arkansas, hereby certify that on May 8, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing and I hereby certify that I have mailed the document by the United States Postal Service to the following non CM/ECF participants:

David Harper
Reg. No. 14100-010
LOMPOC-USP
U.S. Penitentiary
Inmate Mail/Parcels
3901 Klein Blvd.
Lompoc, CA  93436

/s/ *Tyler Williams*
Tyler Williams
Assistant United States Attorney

11