US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

JUN 1 2026

By Mistee Aaron
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **Case No. 2:16CR20002** |
| | ) | |
| **DAVID HARPER** | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

COMES NOW Defendant, DAVID HARPER ("Harper"), appearing *pro se*, and respectfully submits this Reply to the Government's Response [Doc. 50][1] opposing his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 47]. For the reasons set forth below, the Government's arguments are legally and factually insufficient, and Harper respectfully requests that this Court grant the requested sentence reduction.

## I. INTRODUCTION

The Government's response largely ignores the central issue presented by Harper's motion: whether, in light of his advancing age, deteriorating physical and mental health, family caregiving circumstances, extensive rehabilitation, and the broadened compassionate-release framework established by the First Step Act and amended U.S.S.G. § 1B1.13, continued incarceration remains necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Instead of meaningfully engaging with that individualized inquiry, the Government relies primarily upon procedural technicalities and a re-litigation of offense conduct already fully known

[1] "Doc. __" refers to the docket entries in *United States v. Harper*, No. 2:16-cr-20002-TLB-1 (W.D. Ark.). "Def. Mot. at __" refers to Harper's Motion for Compassionate Release (Doc. 47). "Gov. Resp. at __" refers to the Government's Response in Opposition (Doc. 50).

to the sentencing court nearly a decade ago. Compassionate release, however, requires a present-day assessment of whether extraordinary and compelling reasons now warrant relief. Congress enacted the First Step Act precisely because prior compassionate-release procedures were too restrictive and failed to adequately account for evolving humanitarian circumstances after sentencing.

As a preliminary matter, Harper respectfully reminds this Court that *pro se* pleadings must be construed liberally. See *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). The Government's response attempts to impose hyper-technical exhaustion and evidentiary standards inconsistent with the liberal construction afforded *pro se* litigants and inconsistent with the remedial purpose of § 3582(c)(1)(A).

Importantly, the compassionate-release analysis is not limited to the offense conduct existing at the time of sentencing, because Congress expressly authorized courts to evaluate intervening developments, post-sentencing rehabilitation, present-day medical circumstances, and current danger to the community under an individualized review of the § 3553(a) factors. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). Thus, the Government's attempt to rely almost exclusively upon offense conduct from 2015 and 2016 improperly ignores the present-focused inquiry required under § 3582(c)(1)(A).

## II. HARPER SATISFIED THE EXHAUSTION REQUIREMENT

The Government first argues that Harper failed to exhaust administrative remedies because he allegedly failed to prove that his compassionate-release request was received by the Warden and because the request did not contain every legal argument later raised in his motion before this Court. Gov. Resp. at 4-6. Neither argument has merit.

Section 3582(c)(1)(A) requires only that a defendant submit a request for compassionate release to the Bureau of Prisons and either exhaust administrative appeals or wait thirty days after submission to the Warden. The statute does not require a prisoner to prove internal prison mail processing procedures or provide documentary confirmation from prison staff before judicial review may occur.

Harper attached his administrative request as Exhibit 1 to his motion and specifically represented that he submitted the request to the Warden on March 4, 2026. See Def. Mot. at 14. The Government offers no evidence disproving Harper's representation. Indeed, the Government concedes that it contacted the institution but "received no response from the prison." See Gov. Resp. at 5. Thus, the Government's position rests entirely upon speculation.

Importantly, the Government attempts to undermine Harper's credibility by referencing a prior unexhausted motion filed years ago in 2020. See Gov. Resp. at 5. That argument is irrelevant. The fact that Harper previously filed an unexhausted motion does not establish that his present request was not submitted. Nor does it rebut the sworn factual assertions contained in his present filing.

The Government also improperly argues that Harper failed to exhaust specific subsidiary arguments because his request allegedly referenced only family circumstances. See Gov. Resp. at 6. Section 3582(c)(1)(A), however, contains no "issue exhaustion" requirement. The statute requires exhaustion of a compassionate-release request—not exhaustion of every factual detail, legal theory, or future argument later developed during litigation.

Nothing in the text of § 3582(c)(1)(A) mandates that an incarcerated pro se litigant precisely forecast every legal argument eventually presented to the district court. Such an interpretation would

improperly elevate form over substance and frustrate the remedial purpose of the First Step Act. See *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (recognizing broad judicial discretion under the First Step Act).

Moreover, the compassionate-release inquiry necessarily involves evolving factual developments, including medical deterioration, rehabilitation, and updated sentencing considerations. Harper sufficiently alerted the Bureau of Prisons that he sought compassionate release based upon humanitarian circumstances. That satisfies the statute.

Furthermore, nothing in § 3582(c)(1)(A) requires a pro se prisoner to submit a fully litigated legal memorandum to the Bureau of Prisons before seeking judicial review. The exhaustion requirement exists to provide the Bureau of Prisons notice and an opportunity to act—not to create a procedural trap barring later-developed legal arguments or evolving factual circumstances. The Government's proposed interpretation would improperly elevate prison administrative procedure above the remedial purpose of the First Step Act

## III. <u>THE GOVERNMENT MISCONSTRUES AMENDED U.S.S.G. § 1B1.13</u>

The Government's response improperly attempts to narrow the scope of compassionate release despite the Sentencing Commission's substantial expansion of § 1B1.13 through Amendment 814.

The amended guideline expressly recognizes that extraordinary and compelling reasons may exist based upon combinations of circumstances involving aging-related deterioration, chronic medical conditions, family caregiving circumstances, and other comparable humanitarian concerns. See Def. Mot. at 9-13. The Government improperly isolates each circumstance individually while ignoring the cumulative-force analysis contemplated by amended § 1B1.13(b)(5).

Harper does not rely upon a single isolated medical diagnosis. Rather, he presented evidence of progressive physical and psychological deterioration involving obstructive sleep apnea requiring CPAP treatment, hypertension, chronic depression, hip arthritis requiring use of a cane, reduced mobility, and advancing age. See Def. Mot. at 15-18. These conditions collectively demonstrate ongoing deterioration consistent with accelerated aging in confinement.

The Government largely ignores this cumulative medical evidence and instead attempts to characterize Harper's conditions as insufficient because they are not terminal. See Gov. Resp. at 3-4. But compassionate release does not require a terminal illness. The amended policy statement expressly recognizes relief based upon serious deterioration in physical or mental health attributable to aging and confinement. U.S.S.G. § 1B1.13(b)(1)-(2).

Viewed collectively rather than in isolation, Harper's deteriorating mobility, chronic pain, hypertension, CPAP-dependent sleep apnea, advancing age, and persistent depressive disorder establish a progressively declining medical profile substantially different from the healthy 49-year-old individual originally sentenced in 2016. The compassionate-release inquiry necessarily recognizes that lengthy incarceration accelerates aging-related decline and alters both medical vulnerability and recidivism risk over time.

The Eighth Circuit has likewise recognized that district courts possess broad discretion in evaluating whether a defendant's individualized circumstances constitute extraordinary and compelling reasons. See *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022).

## IV. HARPER'S FAMILY CIRCUMSTANCES SUPPORT RELIEF

The Government next argues that Harper failed to establish that his elderly mother is incapacitated or that he is the only available caregiver. See Gov. Resp. at 6-8. This argument

improperly construes amended § 1B1.13 too narrowly.

Harper's motion established that his mother is approaching 80 years old and suffers from ovarian cancer history, diabetes, atrial fibrillation, and advancing frailty. See Def. Mot. at 19-21. Harper further explained that his father is deceased and that his sister—the anticipated family caregiver—has also passed away. *Id.*

The Government attempts to dismiss these concerns because Harper acknowledged that his mother is currently "hanging in" and "marginally independent." See Gov. Resp. at 7. But compassionate release does not require an elderly parent to become completely incapacitated or physically helpless before relief may be considered. Such an interpretation would defeat the humanitarian purpose underlying the amended guideline.

The revised family-circumstances provision was specifically expanded to address the growing reality that incarcerated individuals are increasingly the only available caregivers for aging parents facing progressive decline. Courts evaluating compassionate-release motions routinely recognize foreseeable caregiving necessity as part of the individualized analysis.

The Government also criticizes Harper for failing to conclusively eliminate every hypothetical alternative caregiver. See Gov. Resp. at 8. But the Government offers no evidence that such caregivers actually exist. Harper explained that the family support structure has substantially collapsed following the deaths of his father and sister. See Def. Mot. at 20.

Moreover, family circumstances are only one component of Harper's compassionate-release request. Even *assuming arguendo* that the Court concludes the caregiving evidence alone is insufficient, Harper's medical deterioration, rehabilitation, age, and reduced recidivism risk independently support relief when considered collectively.

## V. THE GOVERNMENT IMPROPERLY RELIES EXCLUSIVELY UPON HISTORICAL OFFENSE CONDUCT

The Government devotes substantial portions of its response to rehashing offense conduct already fully known to the sentencing court in 2016. See Gov. Resp. at 8-10. Harper does not minimize the seriousness of the offense conduct. However, compassionate release requires more than perpetual reliance on historical conduct alone.

Congress enacted § 3582(c)(1)(A) to permit courts to evaluate whether continued incarceration remains necessary in light of present-day circumstances. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022) (recognizing broad sentencing discretion to consider intervening developments). The Government's approach effectively transforms compassionate release into a categorical bar for certain offenders regardless of rehabilitation, age, medical decline, or reduced recidivism risk.

The Government also improperly speculates that Harper necessarily remains dangerous based solely upon offense conduct occurring nearly a decade ago. See Gov. Resp. at 10. But present dangerousness must be evaluated through an individualized assessment under § 3553(a), not through generalized assumptions.

Harper fully acknowledges the seriousness of the underlying offense conduct and does not seek to minimize it. But Congress did not categorically exclude individuals convicted of serious offenses from compassionate release eligibility. Instead, Congress required courts to conduct a present-day individualized assessment. The relevant question before this Court is not whether the original offense conduct was serious—it unquestionably was—but whether continued incarceration at the present time remains greater than necessary to satisfy the purposes of sentencing under §

3553(a).

Significantly, the Government does not meaningfully dispute Harper's extensive rehabilitative efforts while incarcerated. Nor does it dispute his educational accomplishments, vocational programming, institutional compliance, or participation in cognitive and behavioral self-improvement courses. Instead, the Government effectively argues that the original offense conduct alone permanently outweighs all subsequent rehabilitation and changed circumstances. That position is inconsistent with both the First Step Act and the individualized review required under § 3582(c)(1)(A).

The Government's position effectively asks this Court to adopt a categorical rule that individuals convicted of internet-based sex offenses are forever barred from compassionate release regardless of age, health deterioration, rehabilitation, or reduced recidivism risk. Neither § 3582(c)(1)(A) nor amended § 1B1.13 contains such a limitation.

Harper is now nearly 60 years old and suffers from significant chronic medical impairments. See Def. Mot. at 15-18. He has engaged in extensive rehabilitative programming, educational advancement, vocational training, and cognitive-behavioral courses. See Def. Mot. at 25-28. He has maintained institutional compliance and demonstrated sustained efforts toward rehabilitation and self-improvement.

Importantly, the Government largely ignores the substantial empirical recidivism research cited in Harper's motion establishing that recidivism rates decline dramatically with age, particularly among offenders serving lengthy sentences into later adulthood. See Def. Mot. at 27-28. The Sentencing Commission's own research consistently demonstrates that older offenders present substantially lower recidivism risks than younger offenders.

The Government likewise fails to address that Harper remains subject to extensive supervision upon release. Any release granted by this Court may include strict supervised-release conditions tailored to protect the public and ensure continued monitoring.

## VI. COMPASSIONATE RELEASE JURISPRUDENCE CONTINUES TO EVOLVE

The compassionate-release framework established under 18 U.S.C. § 3582(c)(1)(A) continues to evolve rapidly following enactment of the First Step Act and the Sentencing Commission's recent amendments to U.S.S.G. § 1B1.13. Federal courts increasingly recognize that compassionate release is intended to provide a flexible, individualized remedy capable of addressing changed circumstances arising after sentencing, including aging-related deterioration, rehabilitation, family hardship, and excessive continued incarceration in light of present-day realities.

Importantly, the United States Supreme Court is currently considering multiple cases addressing the scope of compassionate release and the breadth of district court discretion under § 3582(c)(1)(A), including *Fernandez v. United States, Rutherford v. United States,* and *Carter v. United States*. Those cases concern the continuing development of compassionate-release jurisprudence and the extent of judicial authority to evaluate extraordinary and compelling reasons in light of evolving circumstances and equitable considerations.

The existence of these pending cases further demonstrates that compassionate release remains an actively developing area of federal sentencing law rather than a narrow or static remedy limited only to terminal illness or immediate death. Against that evolving legal backdrop, Harper respectfully submits that this Court should apply the broad discretionary framework intended by Congress and reaffirmed by the First Step Act and amended § 1B1.13.

## VII. THE § 3553(a) FACTORS NOW SUPPORT A REDUCTION

The § 3553(a) factors no longer support continued incarceration at the originally imposed level.

Harper has already served a substantial portion of a severe 360-month sentence. Continued incarceration under present circumstances is greater than necessary to satisfy the purposes of sentencing, particularly given his deteriorating health, advancing age, rehabilitation, and significantly reduced likelihood of recidivism.

Harper has now spent approximately a decade in federal custody under exceptionally restrictive conditions. The punitive, deterrent, and incapacitative purposes of sentencing have already been substantially served. Continued incarceration into advanced age despite documented physical deterioration, extensive rehabilitation, and diminished recidivism risk no longer meaningfully advances the purposes of sentencing to the same degree it may once have.

The purposes of punishment under § 3553(a)—including deterrence, protection of the public, promotion of respect for the law, and rehabilitation—have already been substantially achieved. Harper's institutional record demonstrates meaningful rehabilitation rather than stagnation.

The First Step Act and amended § 1B1.13 reflect Congress's recognition that sentencing courts must possess flexibility to reevaluate continued imprisonment in light of changed humanitarian circumstances. Harper's case presents precisely the type of individualized combination of factors contemplated by the compassionate-release framework.

## VIII. CONCLUSION

For all of the foregoing reasons, Harper respectfully submits that the combination of his advancing age, deteriorating physical and mental health, extraordinary family circumstances,

extensive rehabilitation, and substantially reduced risk of recidivism collectively establish extraordinary and compelling reasons warranting relief under 18 U.S.C. § 3582(c)(1)(A).

After nearly a decade of incarceration, substantial physical deterioration, extensive rehabilitation, and profound personal change, continued imprisonment at the originally imposed level is no longer necessary to achieve the purposes of sentencing set forth in § 3553(a).

Respectfully submitted,

Dated: May 26, 2026

DAVID HARPER
REG. NO. 14100-010
FCI LOMPOC II
FEDERAL CORR. INSTITUTION
3901 KLEIN BLVD.
LOMPOC, CA 93436
Appearing *Pro Se*

## IX. CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, a true and correct copy of the above and foregoing Defendant's Reply to Government's Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) was sent via First Class U.S. Mail, postage prepaid, to Tyler Williams, Assistant U. S. Attorney at U.S. Attorney's Office U.S. Attorney's Office, 414 Parker Avenue, Fort Smith, AR 72901.

DAVID HARPER

DAVID HARPER
REG. NO. 14100-010
FCI LOMPOC II
FEDERAL CORR. INSTITUTION
3901 KLEIN BLVD.
LOMPOC, CA 93436

May 26, 2026

Mr. Ronald E. Dowling
Clerk of Court
U.S. District Court
Western District of Arkansas
Fort Smith Division
30 South 6th Street, Room 1038
Fort Smith, Arkansas 72901-2437

RE: *Harper v. United States*
Crim No. 2:16-cr-20002-PKH-1

Dear Mr. Dowling:

Enclosed please find and accept for filing Defendant's Reply to Government's Response to Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

DAVID HARPER
Appearing *Pro Se*

*Encl. as noted*

PRESS FIRMLY

FSC MIX Board FSC® C116916

PAPER POUCH how2recycle.info

UNITED STATES POSTAL SERVICE® | PRIORIT MAIL

·ted delivery date specified for domestic use.

stic shipments include $100 of insurance (restrictions apply).*

Tracking® service included for domestic and many international de

d international insurance.**

used internationally, a customs declaration form is required.

· does not cover certain items. For details regarding claims exclusions see the
Mail Manual at http://pe.usps.com.

rnational Mail Manual at http://pe.usps.com for availability and limitations of covera

T RATE ENVELOPE

·TE ■ ANY WEIGHT

CKED ■ INSURED

To schedule free Packag
scan the QR cod

USPS.COM/PICKU

S00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH

UNITED STATES POSTAL SERVICE® Click-N-Ship®

P

usps.com
$9.57
US POSTAGE

9405 5301 0935 5384 6167 02 0095 7000 0207 2901

U.S. POSTAGE PAID
Click-N-Ship®

05/26/2026
0 lb 3 oz

Mailed from 93436 254538243083535

PRIORITY MAIL®

REG. NO. 14100-010, FCI LOMPOC II, FEDERAL CORR.
DAVID HARPER
3901 KLEIN BLVD
LOMPOC CA 93436-2706

Created 2026-05-26
Flat Rate Envelope
RDC 03

C002

CLERK OF COURT, WESTERN DISTRICT OF A
RONALD E DOWLING
30 S 6TH ST STE 1038
FORT SMITH AR 72901-2437

USPS TRACKING #

9405 5301 0935 5384 6167 02

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.